(Slip Opinion) OCTOBER TERM, 2006 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## WALLACE *v.* KATO ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 05–1240.   Argued November 6, 2006—Decided February 21, 2007

In January 1994, Chicago police arrested petitioner, a minor, for murder.  He was tried and convicted, but the charges were ultimately dropped in April 2002.  In April 2003, he filed this suit under 42 U. S. C. §1983 against the city and several of its officers, seeking damages for, *inter alia,* his unlawful arrest in violation of the Fourth Amendment.   The District Court granted respondents summary judgment, and the Seventh Circuit affirmed, ruling that the §1983 suit was time barred because petitioner's cause of action accrued at the time of his arrest, not when his conviction was later set aside.

*Held:* The statute of limitations upon a §1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process.  Pp. 2–12.

   (a) The statute of limitations in a §1983 suit is that provided by the State for personal-injury torts, *e.g., Owens* v. *Okure*, 488 U. S. 235, 249–250; here, two years under Illinois law.  For false imprisonment and its subspecies false arrest, "[t]he . . . cause[s] of action provid[ing] the closest analogy to claims of the type considered here," *Heck* v. *Humphrey*, 512 U. S. 477, 484, the statute of limitations begins to run when the alleged false imprisonment ends, see, *e.g.,* 4 Restatement (Second) of Torts §899, Comment *c,* that is, in the present context, when the victim becomes held pursuant to legal process, see, *e.g., Heck*, *supra,* at 484.  Thus, petitioner's false imprisonment did not end, as he contends, when he was released from custody after the State dropped the charges against him, but rather when he appeared before the examining magistrate and was bound over for trial.  Since

more than two years elapsed between that date and the filing of this suit—even leaving out of the count the period before he reached his majority—the action was time barred. Pp. 2–7.

  (b) Petitioner's contention that *Heck* compels the conclusion that his suit could not accrue until the State dropped its charges against him is rejected. The *Heck* Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been [set aside]. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under §1983." 512 U. S., at 486–487. Even assuming that the *Heck* deferred-accrual rule would be applied to the date petitioner was first held pursuant to legal process, there was in existence at that time no criminal conviction that the cause of action would impugn. What petitioner seeks is the adoption of a principle going well beyond *Heck:* that an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside. The impracticality of such a speculative rule is obvious.

  The fact that §1983 actions sometimes accrue before the setting aside of—indeed, even before the existence of—the related criminal conviction raises the question whether, assuming the *Heck* bar takes effect when the later conviction is obtained, the statute of limitations on the once valid cause of action is tolled as long as the *Heck* bar subsists. However, this Court generally refers to state-law tolling rules, *e.g., Hardin* v. *Straub*, 490 U. S. 536, 538–539, and is unaware of Illinois cases providing tolling in even remotely comparable circumstances. Moreover, a federal tolling rule to this effect would create a jurisprudential limbo in which it would not be known whether tolling is appropriate by reason of the *Heck* bar until it is established that the newly entered conviction would be impugned by the not-yet-filed, and thus utterly indeterminate, §1983 claim. Pp. 7–12.

440 F. 3d 421, affirmed.

  SCALIA, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, THOMAS, and ALITO, JJ., joined. STEVENS, J., filed an opinion concurring in the judgment, in which SOUTER, J., joined. BREYER, J., filed a dissenting opinion, in which GINSBURG, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 05–1240

ANDRE WALLACE, PETITIONER *v.* KRISTEN KATO ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

[February 21, 2007]

JUSTICE SCALIA delivered the opinion of the Court.

Petitioner filed suit under Rev. Stat. §1979, 42 U. S. C. §1983, seeking damages for an arrest that violated the Fourth Amendment. We decide whether his suit is timely.

I

On January 17, 1994, John Handy was shot to death in the city of Chicago. Sometime around 8 p.m. two days later, Chicago police officers located petitioner, then 15 years of age, and transported him to a police station for questioning. After interrogations that lasted into the early morning hours the next day, petitioner agreed to confess to Handy's murder. An assistant state's attorney prepared a statement to this effect, and petitioner signed it, at the same time waiving his *Miranda* rights.

Prior to trial in the Circuit Court of Cook County, petitioner unsuccessfully attempted to suppress his station house statements as the product of an unlawful arrest. He was convicted of first-degree murder and sentenced to 26 years in prison. On direct appeal, the Appellate Court of Illinois held that officers had arrested petitioner without probable cause, in violation of the Fourth Amendment.

*People* v. *Wallace*, 299 Ill. App. 3d 9, 17–18, 701 N. E. 2d 87, 94 (1998). According to that court (whose determination we are not reviewing here), even assuming petitioner willingly accompanied police to the station, his presence there "escalated to an involuntary seizure prior to his formal arrest." *Id.,* at 18, 701 N. E. 2d, at 94. After another round of appeals, the Appellate Court concluded on August 31, 2001, that the effect of petitioner's illegal arrest had not been sufficiently attenuated to render his statements admissible, see *Brown* v. *Illinois*, 422 U. S. 590 (1975), and remanded for a new trial. Judgt. order reported *sub nom. People* v. *Wallace*, 324 Ill. App. 3d 1139, 805 N. E. 2d 756 (2001). On April 10, 2002, prosecutors dropped the charges against petitioner.

On April 2, 2003, petitioner filed this §1983 suit against the city of Chicago and several Chicago police officers, seeking damages arising from, *inter alia*, his unlawful arrest.[1] The District Court granted summary judgment to respondents and the Court of Appeals affirmed. According to the Seventh Circuit, petitioner's §1983 suit was time barred because his cause of action accrued at the time of his arrest, and not when his conviction was later set aside. *Wallace* v. *Chicago*, 440 F. 3d 421, 427 (2006). We granted certiorari, 547 U. S. ___ (2006).

## II

Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts. *Owens* v. *Okure*, 488 U. S. 235, 249–250 (1989); *Wilson* v. *Garcia*,

---

[1] All of petitioner's other state and federal claims were resolved adversely to him and are not before us. We expressly limited our grant of certiorari to the Fourth Amendment false-arrest claim. See 547 U. S. ___ (2006). The city of Chicago is no longer a party to this suit.

471 U. S. 261, 279–280 (1985). The parties agree that under Illinois law, this period is two years. Ill. Comp. Stat., ch. 735, §5/13–202 (West 2003). Thus, if the statute on petitioner's cause of action began to run at the time of his unlawful arrest, or even at the time he was ordered held by a magistrate, his §1983 suit was plainly dilatory, even according him tolling for the two-plus years of his minority, see §5/13–211. But if, as the dissenting judge argued below, the commencement date for running of the statute is governed by this Court's decision in *Heck* v. *Humphrey*, 512 U. S. 477 (1994), that date *may* be the date on which petitioner's conviction was vacated, in which case the §1983 suit would have been timely filed.

While we have never stated so expressly, the accrual date of a §1983 cause of action is a question of federal law that is *not* resolved by reference to state law. The parties agree, the Seventh Circuit in this case so held, see 440 F. 3d, at 424, and we are aware of no federal court of appeals holding to the contrary. Aspects of §1983 which are not governed by reference to state law are governed by federal rules conforming in general to common-law tort principles. See *Heck, supra*, at 483; *Carey* v. *Piphus*, 435 U. S. 247, 257–258 (1978). Under those principles, it is "the standard rule that [accrual occurs] when the plaintiff has 'a complete and present cause of action.'" *Bay Area Laundry and Dry Cleaning Pension Trust Fund* v. *Ferbar Corp. of Cal.*, 522 U. S. 192, 201 (1997) (quoting *Rawlings* v. *Ray*, 312 U. S. 96, 98 (1941)), that is, when "the plaintiff can file suit and obtain relief," *Bay Area Laundry, supra*, at 201. There can be no dispute that petitioner could have filed suit as soon as the allegedly wrongful arrest occurred, subjecting him to the harm of involuntary detention, so the statute of limitations would normally commence to run from that date.

There is, however, a refinement to be considered, arising from the common law's distinctive treatment of the torts of

false arrest and false imprisonment, "[t]he . . . cause[s] of action [that] provid[e] the closest analogy to claims of the type considered here," *Heck, supra*, at 484. See 1 D. Dobbs, Law of Torts §47, p. 88 (2001). False arrest and false imprisonment overlap; the former is a species of the latter. "Every confinement of the person is an imprisonment, whether it be in a common prison or in a private house, or in the stocks, or even by forcibly detaining one in the public streets; and when a man is lawfully in a house, it is imprisonment to prevent him from leaving the room in which he is." M. Newell, Law of Malicious Prosecution, False Imprisonment, and Abuse of Legal Process §2, p. 57 (1892) (footnotes omitted). See also 7 S. Speiser, C. Krause, & A. Gans, American Law of Torts §27:2, pp. 940–942 (1990). We shall thus refer to the two torts together as false imprisonment. That tort provides the proper analogy to the cause of action asserted against the present respondents for the following reason: The sort of unlawful detention remediable by the tort of false imprisonment is detention *without legal process*, see, *e.g.*, W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts §11, p. 54, §119, pp. 885–886 (5th ed. 1984); 7 Speiser, *supra*, §27:2, at 943–944, and the allegations before us arise from respondents' detention of petitioner *without legal process* in January 1994. They did not have a warrant for his arrest.

The running of the statute of limitations on false imprisonment is subject to a distinctive rule—dictated, perhaps, by the reality that the victim may not be able to sue while he is still imprisoned: "Limitations begin to run against an action for false imprisonment when the alleged false imprisonment ends." 2 H. Wood, Limitation of Actions §187d(4), p. 878 (4th rev. ed. 1916); see also 4 Restatement (Second) of Torts §899, Comment *c* (1977); A. Underhill, Principles of Law of Torts 202 (1881). Thus, to determine the beginning of the limitations period in this

case, we must determine when petitioner's false imprisonment came to an end.

Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process*— when, for example, he is bound over by a magistrate or arraigned on charges. Dobbs, *supra*, §39, at 74, n. 2; Keeton, *supra*, §119, at 888; H. Stephen, Actions for Malicious Prosecution 120–123 (1888). Thereafter, unlawful detention forms part of the damages for the "entirely distinct" tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process.[2] Keeton, *supra*, §119, at 885–886; see 1 F. Harper, F. James, & O. Gray, Law of Torts §3.9, p. 3:36 (3d ed. 1996); 7 Speiser, *supra*, §27:2, at 943–945. "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." Keeton, *supra*, §119, at 888; see also *Heck, supra,* at 484; 8 Speiser, *supra*, §28:15, at 80. Thus, petitioner's contention

———————

[2] We have never explored the contours of a Fourth Amendment malicious-prosecution suit under §1983, see *Albright* v. *Oliver*, 510 U. S. 266, 270–271, 275 (1994) (plurality opinion), and we do not do so here. See generally 1 M. Schwartz, Section 1983 Litigation §3.18[C], pp. 3–605 to 3–629 (4th ed. 2004) (noting a range of approaches in the lower courts). Assuming without deciding that such a claim is cognizable under §1983, petitioner has not made one. Petitioner did not include such a claim in his complaint. He in fact abandoned a state-law malicious-prosecution claim in the District Court, and stated, in his opposition to respondents' first motion for summary judgment, that "Plaintiff does not seek to raise . . . a malicious prosecution claim under §1983," Record, Doc. 17, p. 3, n. 5. In this Court, he has told us that respondents are "mistaken in characterizing petitioner's cause of action as involving 'unwarranted prosecution.'" Reply Brief 12.

that his false imprisonment ended upon his release from custody, after the State dropped the charges against him, must be rejected. It ended much earlier, when legal process was initiated against him, and the statute would have begun to run from that date, but for its tolling by reason of petitioner's minority.[3]

Petitioner asserts that the date of his release from custody must be the relevant date in the circumstances of the present suit, since he is seeking damages up to that time. The theory of his complaint is that the initial Fourth Amendment violation set the wheels in motion for his subsequent conviction and detention: The unlawful arrest led to the coerced confession, which was introduced at his trial, producing his conviction and incarceration. As we have just explained, at common law damages for detention after issuance of process or arraignment would be attributable to a tort other than the unlawful arrest alleged in petitioner's complaint—and probably a tort chargeable to defendants other than the respondents here. Even assuming, however, that all damages for detention pursuant to legal process could be regarded as consequential damages attributable to the unlawful arrest, that would not alter the commencement date for the statute of limitations. "Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or

––––––––––

[3] This is not to say, of course, that petitioner could not have filed suit immediately upon his false arrest. While the statute of limitations did not begin to run until petitioner became detained pursuant to legal process, he was injured and suffered damages at the moment of his arrest, and was entitled to bring suit at that time. See *Adler* v. *Beverly Hills Hospital*, 594 S. W. 2d 153, 156 (Tex. Civ. App. 1980) ("We may concede that a person falsely imprisoned has the right to sue on the first day for his detention").

predictable." 1 C. Corman, Limitation of Actions §7.4.1, pp. 526–527 (1991) (footnotes omitted); see also 54 C. J. S., Limitations of Actions §112, p. 150 (2005). Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief.

We conclude that the statute of limitations on petitioner's §1983 claim commenced to run when he appeared before the examining magistrate and was bound over for trial. Since more than two years elapsed between that date and the filing of this suit—even leaving out of the count the period before he reached his majority—the action was time barred.

## III

This would end the matter, were it not for petitioner's contention that *Heck* v. *Humphrey,* 512 U. S., at 477, compels the conclusion that his suit could not accrue until the State dropped its charges against him. In *Heck*, a state prisoner filed suit under §1983 raising claims which, if true, would have established the invalidity of his outstanding conviction. We analogized his suit to one for malicious prosecution, an element of which is the favorable termination of criminal proceedings. *Id.*, at 484. We said:

> "[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U. S. C. §2254. A claim for damages bearing that re-

lationship to a conviction or sentence that has *not* been so invalidated is not cognizable under §1983." *Id.,* at 486–487 (footnote omitted).

We rested this conclusion upon "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id.*, at 486. "'Congress,'" we said, "'has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of §1983.'" *Id.*, at 482 (quoting *Preiser* v. *Rodriguez*, 411 U. S. 475, 490 (1973)).

As the above excerpts show, the *Heck* rule for deferred accrual is called into play only when there exists "a conviction or sentence that has *not* been . . . invalidated," that is to say, an "outstanding criminal judgment." It delays what would otherwise be the accrual date of a tort action until the setting aside *of an extant conviction* which success in that tort action would impugn. We assume that, for purposes of the present tort action, the *Heck* principle would be applied not to the date of accrual but to the date on which the statute of limitations began to run, that is, the date petitioner became held pursuant to legal process. See *supra*, at 4–5. Even at that later time, there was in existence no criminal conviction that the cause of action would impugn; indeed, there may not even have been an indictment.

What petitioner seeks, in other words, is the adoption of a principle that goes well beyond *Heck:* that an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside. The impracticality of such a rule should be obvious. In an action for false arrest it would require the plaintiff (and if he brings suit promptly, the court) to speculate about whether a prosecution will be brought, whether it

will result in conviction, and whether the pending civil action will impugn that verdict, see *Heck*, 512 U. S., at 487, n. 7—all this at a time when it can hardly be known what evidence the prosecution has in its possession. And what if the plaintiff (or the court) guesses wrong, and the anticipated future conviction never occurs, because of acquittal or dismissal? Does that event (instead of the *Heck*-required setting aside of the extant conviction) trigger accrual of the cause of action? Or what if prosecution never occurs—what will the trigger be then?

We are not disposed to embrace this bizarre extension of *Heck*. If a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. See *id.*, at 487–488, n. 8 (noting that "abstention may be an appropriate response to the parallel state-court proceedings"); *Quackenbush* v. *Allstate Ins. Co.*, 517 U. S. 706, 730 (1996). If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit. *Edwards* v. *Balisok*, 520 U. S. 641, 649 (1997); *Heck*, 512 U. S., at 487.

There is, however, one complication that we must address here. It arises from the fact that §1983 actions, unlike the tort of malicious prosecution which *Heck* took as its model, see *id.,* at 484, sometimes accrue before the setting aside of—indeed, even before the existence of—the related criminal conviction. That of course is the case here, and it raises the question whether, assuming that the *Heck* bar takes effect when the later conviction is obtained, the statute of limitations on the once valid cause of action is tolled as long as the *Heck* bar subsists. In the context of the present case: If petitioner's conviction on

April 19, 1996, caused the statute of limitations on his (possibly) impugning but yet-to-be-filed cause of action to be tolled until that conviction was set aside, his filing here would have been timely.

We have generally referred to state law for tolling rules, just as we have for the length of statutes of limitation. *Hardin* v. *Straub*, 490 U. S. 536, 538–539 (1989); *Board of Regents of Univ. of State of N. Y.* v. *Tomanio*, 446 U. S. 478, 484–486 (1980). Petitioner has not brought to our attention, nor are we aware of, Illinois cases providing tolling in even remotely comparable circumstances. (Indeed, petitioner did not even argue for such tolling below, though he supported its suggestion at oral argument.) Nor would we be inclined to adopt a federal tolling rule to this effect. Under such a regime, it would not be known whether tolling is appropriate by reason of the *Heck* bar until it is established that the newly entered conviction would be impugned by the not-yet-filed, and thus utterly indeterminate, §1983 claim.[4] It would hardly be desirable to place the question of tolling *vel non* in this jurisprudential limbo, leaving it to be determined by those later events, and then pronouncing it retroactively. Defendants need to be on notice to preserve beyond the normal limitations period evidence that will be needed for their defense; and a statute that becomes retroactively extended, by the action of the plaintiff in crafting a conviction-impugning cause of action, is hardly a statute of repose.[5]

───────────

[4] Had petitioner filed suit upon his arrest and had his suit then been dismissed under *Heck*, the statute of limitations, absent tolling, would have run by the time he obtained reversal of his conviction. If under those circumstances he were not allowed to refile his suit, *Heck* would produce immunity from §1983 liability, a result surely not intended. Because in the present case petitioner did not file his suit within the limitations period, we need not decide, had he done so, how much time he would have had to refile the suit once the *Heck* bar was removed.

[5] JUSTICE STEVENS reaches the same result by arguing that, under *Stone* v. *Powell*, 428 U. S. 465 (1976), the *Heck* bar can never come into

JUSTICE BREYER argues in dissent that equitable tolling should apply "so long as the issues that [a §1983] claim would raise are being pursued in state court." *Post*, at 4. We know of no support (nor does the dissent suggest any) for the far-reaching proposition that equitable tolling is appropriate to avoid the risk of concurrent litigation. As best we can tell, the only rationale for such a rule is the concern that "petitioner would have had to divide his attention between criminal and civil cases." *Post*, at 1.

———————

play in a §1983 suit seeking damages for a Fourth Amendment viola-
tion, so that "a habeas remedy was never available to [petitioner] in the
first place." *Post*, at 3 (opinion concurring in judgment). This reads
*Stone* to say more than it does. Under *Stone*, Fourth Amendment
violations are *generally* not cognizable on federal habeas, but they *are*
cognizable when the State has failed to provide the habeas petitioner
"an opportunity for full and fair litigation of a Fourth Amendment
claim." 428 U. S., at 482. Federal habeas petitioners have sometimes
succeeded in arguing that *Stone*'s general prohibition does not apply.
See, *e.g.*, *Herrera* v. *LeMaster*, 225 F. 3d 1176, 1178 (2000), aff'd on this
point, 301 F. 3d 1192, 1195, n. 4 (CA10 2002) (en banc); *United States
ex rel. Bostick* v. *Peters*, 3 F. 3d 1023, 1029 (CA7 1993); *Agee* v. *White*,
809 F. 2d 1487, 1490 (CA11 1987); *Doescher* v. *Estelle*, 666 F. 2d 285,
287 (CA5 1982); *Boyd* v. *Mintz*, 631 F. 2d 247, 250–251 (CA3 1980); see
also 2 R. Hertz & J. Liebman, Federal Habeas Corpus Practice and
Procedure §§27.1–27.3, pp. 1373–1389 (5th ed. 2005). At the time of a
Fourth Amendment wrong, and at the time of conviction, it cannot be
known whether a prospective §1983 plaintiff will receive a full and fair
opportunity to litigate his Fourth Amendment claim. It thus remains
the case that a conflict with the federal habeas statute is possible, that
a Fourth Amendment claim can necessarily imply the invalidity of a
conviction, and that if it does it must, under *Heck*, be dismissed.

Insofar as JUSTICE STEVENS simply suggests that *Heck* has no bearing
here because *petitioner* received a full and fair opportunity to litigate
his Fourth Amendment claim in state court, the argument is equally
untenable. At the time that petitioner became detained pursuant to
legal process, it was impossible to predict whether this would be true.
And even at the point when his limitations period ended, state proceed-
ings on his conviction were ongoing; full and fair opportunity up to that
point was not enough. *Stone* requires full and fair opportunity to
litigate a Fourth Amendment claim "at trial *and on direct review*." 428
U. S., at 494–495, n. 37 (emphasis added).

But when has it been the law that a criminal defendant, or a potential criminal defendant, is absolved from all other responsibilities that the law would otherwise place upon him? If a defendant has a breach-of-contract claim against the prime contractor for his new home, is he entitled to tolling for that as well while his criminal case is pending? Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs. Besides its never-heard-of-before quality, the dissent's proposal suffers from a more ironic flaw. Although the dissent criticizes us for having to develop a system of stays and dismissals, it should be obvious that the omnibus tolling solution will require the same. Despite the existence of the new tolling rule, some (if not most) plaintiffs will nevertheless file suit before or during state criminal proceedings. How does the dissent propose to handle such suits? Finally, the dissent's contention that law enforcement officers would prefer the possibility of a later §1983 suit to the more likely reality of an immediate filing, *post* at 5, is both implausible and contradicted by those who know best. As no fewer than 11 States have informed us in this litigation, "States and municipalities have a strong interest in timely notice of alleged misconduct by their agents." Brief for State of Illinois et al. as *Amici Curiae* 18.

* * *

We hold that the statute of limitations upon a §1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process. Since in the present case this occurred (with appropriate tolling for the plaintiff's minority) more than two years before the complaint was filed, the suit was out of time. The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 05–1240

_____

## ANDRE WALLACE, PETITIONER *v.* KRISTEN KATO ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SEVENTH CIRCUIT

[February 21, 2007]

JUSTICE STEVENS, with whom JUSTICE SOUTER joins, concurring in the judgment.

While I do not disagree with the Court's conclusion, I reach it by a more direct route. The alleged Fourth Amendment violation at issue in this case had two distinct consequences for petitioner: First, it provided him with a federal cause of action for damages under 42 U. S. C. §1983, and second, it provided him with an objection to the admissibility of certain evidence in his state criminal trial. The crux of petitioner's argument before this Court is that *Heck* v. *Humphrey*, 512 U. S. 477 (1994), provides the appropriate rule of accrual for his §1983 claim. As both he and the majority note, *Heck* held that

> "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U. S. C. §2254. . . . Thus, when a state prisoner seeks damages in a §1983 suit, the district court must consider whether a judgment in favor of the plaintiff

would necessarily imply the invalidity of his convic-
tion or sentence; if it would, the complaint must be
dismissed unless the plaintiff can demonstrate that
the conviction or sentence has already been invali-
dated." *Id.*, at 486–487 (footnote omitted).

Relying on this principle, petitioner contends that his
federal cause of action did not accrue until after the crimi-
nal charges against him were dropped.

Unlike the majority, my analysis would not depend on
any common-law tort analogies.[1] Instead, I would begin
where all nine Justices began in *Heck*. That case, we
unanimously agreed, required the Court to reconcile §1983
with the federal habeas corpus statute.[2] In concluding
that Heck's damages claim was not cognizable under
§1983, we found that the writ of habeas corpus, and not
§1983, affords the "'appropriate remedy for state prisoners
attacking the validity of the fact or length of their con-

––––––––

[1] See *Heck*, 512 U. S., at, 492 (SOUTER, J., concurring in judgment)
("Common-law tort rules can provide a 'starting point for the inquiry
under §1983,' *Carey* v. *Piphus*, 435 U. S. 247, 258 (1978), but . . . [a]t
the same time, we have consistently refused to allow common-law
analogies to displace statutory analysis, declining to import even well-
settled common-law rules into §1983 'if [the statute's] history or pur-
pose counsel against applying [such rules] in §1983 actions.' *Wyatt* v.
*Cole*, 504 U. S. 158, 164 (1992)" (brackets in original)).

[2] See *id.,* at 480 ("This case lies at the intersection of the two most
fertile sources of federal-court prisoner litigation—the Civil Rights Act
of 1871, Rev. Stat. §1979, as amended, 42 U. S. C. §1983, and the
federal habeas corpus statute, 28 U. S. C. §2254"); *id.,* at 491 (SOUTER,
J., concurring in judgment) ("The Court begins its analysis as I would,
by observing that 'this case lies at the intersection of the two most
fertile sources of federal-court prisoner litigation—the Civil Rights Act
of 1871, . . . 42 U. S. C. §1983, and the federal habeas corpus statute, 28
U. S. C. §2254'"); *id.,* at 490 (THOMAS, J., concurring) ("The Court and
JUSTICE SOUTER correctly begin their analyses with the realization that
'this case lies at the intersection of . . . the Civil Rights Act of 1871, Rev.
Stat. §1979, as amended, 42 U. S. C  §1983, and the federal habeas
corpus statute, 28 U. S. C. §2254' ").

finement.'" *Id.,* at 482 (quoting *Preiser* v. *Rodriguez*, 411 U. S. 475, 490 (1973)). Given our holding in *Stone* v. *Powell*, 428 U. S. 465, 481–482 (1976), however, that writ cannot provide a remedy for this petitioner. And because a habeas remedy was never available to him in the first place, *Heck* cannot postpone the accrual of petitioner's §1983 Fourth Amendment claim.[3] So while it may well be appropriate to stay the trial of claims of this kind until after the completion of state proceedings, see, *e.g.*, *Quackenbush* v. *Allstate Ins. Co.*, 517 U. S. 706, 731 (1996); cf. *Younger* v. *Harris*, 401 U. S. 37 (1971), I am aware of no legal basis for holding that the cause of action has not accrued once the Fourth Amendment violation has been completed.

The Court regrettably lets the perfect become the enemy of the good. It eschews my reasoning because "[f]ederal habeas petitioners have *sometimes* succeeded in arguing that *Stone*'s general prohibition does not apply." *Ante*, at 11, n. 5 (emphasis added). However, in the vast run of cases, a State will provide a habeas petitioner with "an opportunity for full and fair litigation of a Fourth Amendment claim," *Stone*, 428 U. S., at 482, and *Heck* will not apply. It is always possible to find aberrant examples in the law, but we should not craft rules for the needle rather than the haystack in an area like this.

---

[3] See *Spencer* v. *Kemna*, 523 U. S. 1, 21 (1998) (SOUTER, J., joined by O'Connor, GINSBURG, and BREYER, JJ., concurring) (concluding that a plaintiff may bring §1983 claim if he could not bring the same claim under the habeas statute); *ibid.* (GINSBURG, J., concurring) ("I have come to agree with JUSTICE SOUTER's reasoning: Individuals without recourse to the habeas statute because they are not 'in custody' . . . fit within §1983's 'broad reach'"); *id.,* at 25, n. 8 (STEVENS, J., dissenting) ("Given the Court's holding that petitioner does not have a remedy under the habeas statute, it is perfectly clear, as JUSTICE SOUTER explains, that he may bring an action under 42 U. S. C. §1983").

# SUPREME COURT OF THE UNITED STATES

No. 05–1240

## ANDRE WALLACE, PETITIONER *v*. KRISTEN KATO ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

[February 21, 2007]

JUSTICE BREYER, with whom JUSTICE GINSBURG joins, dissenting.

I agree with the Court that the accrual date of a 42 U. S. C. §1983 claim is not postponed by the presence of a possible bar to suit under *Heck* v. *Humphrey*, 512 U. S. 477 (1994). I also agree with the rest of the Court and with JUSTICE STEVENS that had petitioner timely filed his §1983 case, the Federal District Court might have found it appropriate to stay the trial of his claims until the completion of state proceedings. *E.g., Quackenbush* v. *Allstate Ins. Co.*, 517 U. S. 706, 731 (1996). In the absence of a stay, a litigant like petitioner would have had to divide his attention between criminal and civil cases with attendant risks of loss of time and energy as well as of inconsistent findings.

The Court's holding, however, simply leads to the question of what is to happen when, for example, the possibility of a *Heck* problem prevents the court from considering the merits of a §1983 claim. And I disagree with the Court's insistence upon a rule of law that would require immediate filing, followed by an uncertain system of stays, dismissals, and possible refiling. *Ante*, at 9–10, n. 4 (majority opinion); *ante*, at 3 (STEVENS, J., concurring in judgment). I disagree because there is a well-established legal tool better able to deal with the problems presented

by this type of suit.

Where a "plaintiff because of disability, irremediable lack of information, or other circumstances beyond his control just cannot reasonably be expected to sue in time," courts have applied a doctrine of "equitable tolling." *Miller* v. *Runyon*, 77 F. 3d 189, 191 (CA7 1996) (Posner, C. J.). The doctrine tolls the running of the limitations period until the disabling circumstance can be overcome. (This is why the limitations period does not run against a falsely arrested person until his false imprisonment ends. His action has certainly accrued because, as the majority recognizes, he can file his claim immediately if he is able to do so. *Ante*, at 4, 6, n. 3.) 77 F. 3d, at 191; see also *Cada* v. *Baxter Healthcare Corp.*, 920 F. 2d 446, 450–453 (CA7 1990).

In particular, equitable tolling could apply where a §1983 plaintiff reasonably claims that the unlawful behavior of which he complains was, or will be, necessary to a criminal conviction. It could toll the running of the limitations period: (1) from the time charges are brought until the time they are dismissed or the defendant is acquitted or convicted, and (2) thereafter during any period in which the criminal defendant challenges a conviction (on direct appeal, on state collateral challenge, or on federal habeas) and reasonably asserts the behavior underlying the §1983 action as a ground for overturning the conviction.

I find it difficult to understand why the Court rejects the use of "equitable tolling" in regard to typical §1983 plaintiffs. *Ante*, at 10. The Court's alternative—file all §1983 claims (including potentially *Heck*-barred claims) at once and then seek stays or be subject to dismissal and refiling—suffers serious practical disadvantages. For one thing, that approach would force all potential criminal defendants to file all potential §1983 actions soon lest they lose those claims due to protracted criminal proceedings. For another, it would often require a federal court, seeking

to determine whether to dismiss an action as *Heck* barred or to grant a stay, to consider issues likely being litigated in the criminal proceeding (Was the Constitution violated? Was the violation-related evidence necessary for conviction?).  The federal court's decision as to whether a claim was *Heck* barred (say, whether the alleged constitutional violation was central to the state criminal conviction) might later bind a state court on conviction review.  Because of this, even a claim without a likely *Heck* bar might linger on a federal docket because the federal court (or the plaintiff who has been forced to early file) wishes to avoid interfering with any state proceedings and therefore must postpone reaching, not only the merits of the §1983 claim, but the threshold *Heck* inquiry as well.

Principles of equitable tolling avoid these difficulties. Since equitable tolling obviates the need for immediate filing, it permits the criminal proceedings to winnow the constitutional wheat from chaff, and thereby increase the likelihood that the constitutionally meritless claims will never (in a §1983 action) see the light of day.  See *Allen* v. *McCurry*, 449 U. S. 90, 95–96 (1980) (federal court gives preclusive effect to constitutional determinations as to issues already litigated in state court).  Moreover, an appropriate equitable tolling principle would apply not only to state criminal proceedings as here, but also to state appellate proceedings, state collateral attacks, and federal *habeas* proceedings.

Of course, §1983 ordinarily borrows its limitations principles from state law.  42 U. S. C. §1988(a).  And I do not know whether or which States have comparable equitable tolling principles in place.  If a given state court lacks the necessary tolling provision, however, §1983, in my view, permits the federal courts to devise and impose such principles. See *Hardin* v. *Straub*, 490 U. S. 536, 538–540 (1989) ("[G]aps in federal civil rights acts should be filled by state law, as long as that law is not inconsistent

with federal law" and its "chief goals of compensation and deterrence or its subsidiary goals of uniformity and federalism" (footnote omitted)); *Heck* v. *Humphrey*, 997 F. 2d 355, 358 (CA7 1993) (Posner, J.) (articulating why federal tolling regime may apply to §1983 claims), aff'd on other grounds, 512 U. S., at 489. Cf. *Board of Regents of Univ. of State of N. Y.* v. *Tomanio*, 446 U. S. 478, 490 (1980).

The use of equitable tolling in cases of potential temporal conflict between civil §1983 and related criminal proceedings is consistent with, indeed, it would further, §1983's basic purposes. It would provide for orderly adjudication, minimize the risk of inconsistent legal determinations, avoid clogging the courts with potentially unnecessary "protective" filings, and, above all, assure a plaintiff who possesses a meritorious §1983 claim that his pursuit of criminal remedies designed to free him from unlawful confinement will not compromise his later ability to obtain civil §1983 redress as well.

The Court is wrong in concluding that the principle I have described would "place" the tolling "question" in "jurisprudential limbo." *Ante*, at 10. Under the approach I propose, *supra*, at 2, a potential §1983 plaintiff knows his claim is being tolled so long as the issues that claim would raise are being pursued in state court. Such a rule is prophylactic (it will sometimes toll claims that would not be barred by *Heck*), but under such an approach neither the plaintiff, nor the defendant, nor the federal court need speculate as to whether the claims are in any way barred until the state court has had the opportunity to consider the claims in the criminal context.

A tolling principle certainly seems to me to create greater order than the rule the majority sets out, whereby all criminal defendants must file their §1983 suits immediately, some will be stayed, some dismissed, and then some may be refiled and entitled to tolling, *ante*, at 10, n. 4. The majority acknowledges that tolling may be

necessary to protect the plaintiff who previously filed and was dismissed. *Ibid.* Why not simply apply that tolling principle across the board?

The majority is also wrong when it suggests that the proposed equitable tolling rule would create a significant problem of lack of notice. *Ante*, at 12. Because the rule would toll only while the potential §1983 plaintiff is challenging the alleged misconduct in a state court, the State itself would have notice of the plaintiff's claims. For similar reasons, the potential individual §1983 defendants, the state officers, would also likely have notice of the charge. But even if they do not, I believe that many would prefer to forgo immediate notice, for it comes with a pricetag attached—the price consists of being immediately sued by the filing of a §1983 lawsuit, rife with stays and delays, which otherwise, in the course of time (as claims are winnowed in state court) might never have been filed.

The Court's suggested limitations system, like an equitable tolling rule, will produce some instances in which a plaintiff will file a §1983 lawsuit at an initially uncertain future date. *Ante,* at 10, n. 4. And, under both approaches, in the many §1983 suits that do not involve any *Heck* bar, a defendant can and will file immediately and his suit would proceed (for there is no tolling unless the potential §1983 plaintiff is asserting in a conviction challenge that a constitutional violation did impugn his conviction). My problem with the Court's approach lies in its insistence that all potential plaintiffs (including those whose suits may be *Heck* barred) file immediately—even though their suits cannot then proceed. With tolling, only rarely would a plaintiff choose to file a potentially *Heck*-barred §1983 suit while his criminal case is pending; and in those cases the district court could, if it wished, stay the action, or simply dismiss the suit without prejudice, secure in the knowledge that the suit could be timely filed at a later date.

The Court's refusal to admit the equitable tolling possi-

bility means that large numbers of defendants will be sued immediately by all potential §1983 plaintiffs with arguable *Heck* issues, no matter how meritless the claims; these suits may be endlessly stayed or dismissed and then, at some point in the future, some defendants will also be sued again. With equitable tolling, however, defendants will be sued once, in suits with constitutional claims that a state court has not already found meritless, at a time when the suit can be promptly litigated. Given the practical difficulties of the Court's approach, I would not rule out now, in advance, the use of an equitable tolling rule along the lines I have described.

Because this matter has not been fully argued, I would vacate the Seventh Circuit's determination and remand for consideration of the issues I here raise. For these reasons, I respectfully dissent.