**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GEORGE HAMILTON,
                    *Plaintiff-Appellant,*

            v.

EDMUND G. BROWN JR.,* Attorney
General, et al.,
                    *Defendants-Appellees.*

No. 09-15236

DC No.
CV 04-5929 NVW

OPINION

Appeal from the United States District Court
for the Eastern District of California
Neil V. Wake, District Judge, Presiding

Submitted December 10, 2010**
San Francisco, California

Filed January 4, 2011

Before: Robert E. Cowen,*** A. Wallace Tashima, and
Barry G. Silverman, Circuit Judges.

Opinion by Judge Tashima.

---

*Edmund G. Brown Jr. is substituted for his predecessor as Attorney General of California pursuant to Fed. R. App. P. 43(c)(2).

**The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2)(C).

***The Honorable Robert E. Cowen, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

273

## COUNSEL

George Hamilton, Kern Valley State Prison, Delano, California, plaintiff-appellant, appearing *pro se*.

No appearance for the defendants-appellees.

## OPINION

TASHIMA, Circuit Judge:

We must decide whether California state prison inmates constitutionally may be required to provide blood samples for DNA identification under California's DNA and Forensic Identification Database and Data Bank Act of 1998, as amended, Cal. Pen. Code § 295 *et seq.* (the "Act" or the "California DNA Act"). *Pro se* plaintiff George Hamilton, a California state prison inmate, alleges that prison officials forcibly extracted a blood sample for DNA identification without his consent. He contends that this violated his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution and under California state law. The district court dismissed Hamilton's second amended complaint ("SAC") with prejudice.[1] This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

[1]Because the district court dismissed this action at the screening stage under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A(a), defendants did not enter an appearance either in the district court or here on appeal.

### H3>**I**

### BACKGROUND

#### A.  *Hamilton's allegations*[2]

Hamilton is serving a sentence of thirty-nine years to life in state prison. He alleges that, on October 7, 2003, Corcoran State Prison guards attempted to break his arm in retaliation for his trouble-making, which included filing complaints against prison officials, accusing them of corruption, and helping a legally-blind fellow inmate to file a lawsuit against prison officials. The day after that incident, the same prison guards escorted Hamilton to the prison medical clinic and demanded that Hamilton provide a blood sample for DNA analysis. Hamilton refused on the grounds that he did not receive a written notice or proof of a valid court order. Hamilton alleges that defendants' true motive in collecting a blood sample was to "set him up" in retaliation for his complaints.

After Hamilton's refusal, he received a notice stating that blood sample collection is authorized by Cal. Penal Code § 296. The notice also stated: "ON 10/8/03 YOU WERE INFORMED OF YOUR REQUIREMENT TO SUBMIT AND YOU REFUSED. AS A RESULT, YOU ARE NOW SUBJECT TO USE OF FORCE." In response, Hamilton wrote to various state and federal officials to inform them that he was "the victim of malicious and excessive force," and that prison officials were trying to force him to turn over a blood sample without proper written notice or a "bona fide court order."

On November 17, 2003, Hamilton received a medical pass, allowing him to visit the prison hospital the next day for what

---

[2]These facts are taken from the allegations in Hamilton's SAC, which we accept as true for purposes of this appeal. *Resnick v. Warden Hayes*, 213 F.3d 443, 447 (9th Cir. 2000).

he thought was a podiatry appointment. The next day, defendant M. Jost came to Hamilton's cell, handcuffed him and escorted him to the medical clinic. When Hamilton arrived, defendants Sgt. E. Lawton, M. Chapman, a medical assistant, and a nurse demanded that he provide a blood sample. When he refused, the defendants exerted force. They strapped Hamilton, still handcuffed, into a chair and extracted a blood sample. On the prison's record of Hamilton's visit to the medical clinic, Hamilton wrote, "My DNA was taken against my will, under deception, fraud, force and fear, while I was handcuffed."

## B.  *Procedural History*

In his complaint, Hamilton named the state Attorney General, a State Senator, and Does 1-100, identified as personnel of the state's Forensic Identification Data Base and Data Bank, as defendants. Reviewing Hamilton's complaint pursuant to the PLRA, 28 U.S.C. § 1915A,[3] the magistrate judge dismissed the complaint for failure to state a claim, with leave to amend. The court explained that Hamilton "must link each named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights." In addition, the court explained that Hamilton could not pursue a claim for damages against the Attorney General in his official capacity.

Hamilton then filed an amended complaint, which the magistrate judge again dismissed with leave to amend. The court explained that Hamilton again failed to link his claims to any named defendant or any Doe defendant. The order reiterated

---

[3]The PLRA requires a court to review, before docketing or as soon thereafter as practicable, any civil action brought by a prisoner seeking redress from a governmental entity, officer or employee. 28 U.S.C. § 1915A(a). At the screening stage, the court must dismiss the complaint or any portion thereof that is "frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b).

that the Attorney General could not be sued for damages in his official capacity. Hamilton was instructed that he was required to

> demonstrate in the Second Amended Complaint how the conditions complained of resulted in a deprivation of his constitutional rights. [Citation omitted.] The Second Amended Complaint must specifically state how each Defendant is involved. Further, there can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.

Hamilton's SAC adds as defendants prison officials and employees allegedly involved in the collection of the blood sample, including the prison warden, two prison guards, and prison medical clinic personnel. On January 6, 2009, the district judge dismissed the SAC with prejudice. He concluded that it was "not organized into a short and plain statement of the claim," in violation of Fed. R. Civ. P. 8(a). In addition, the district court stated that Hamilton failed to "allege that [he] suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of the defendant."

Hamilton timely appealed.

## II

## STANDARD OF REVIEW

We review *de novo* a district court's dismissal of a prisoner complaint under 28 U.S.C. § 1915A for failure to state a claim upon which relief can be granted. *Resnick*, 213 F.3d at 447. "Under § 1915A, when determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Id.* "Additionally, in general, courts

must construe pro se pleadings liberally." *Id.* (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). We may affirm the district court on any ground supported by the record. *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1059 (9th Cir. 2007).

## III

## DISCUSSION

### A.  *Overview of the California DNA Act*

**[1]**  The California DNA Act, Cal Pen. Code §§ 295-300.3, was adopted in 1998

> to assist federal, state, and local criminal justice and law enforcement agencies . . . in the expeditious and accurate detection and prosecution of individuals responsible for sex offenses and other crimes, the exclusion of suspects who are being investigated for these crimes, and the identification of missing and unidentified persons, particularly abducted children.

Cal. Pen. Code § 295(c). California contributes information in its DNA database to a national DNA index maintained by the Federal Bureau of Investigation. The FBI uses a computer program to identify forensic unknowns (*e.g.* crime scene samples) with reference to a felony offender's known sample that was previously obtained, analyzed, and stored in accordance with state or federal law. *United States v. Kincade*, 379 F.3d 813, 818-820 (9th Cir. 2004) (en banc) (plurality opinion); Cal. Pen. Code § 295(c), (g), (h)(4).

**[2]**  As is relevant here, the Act requires California prison inmates[4] to "provide buccal swab samples and thumb and

---

[4]The Act applies to "qualifying persons." Qualifying persons include "any person, including any juvenile, who is convicted of or pleads guilty

palm print impressions and any blood or other specimens required pursuant to this chapter." *Id.* § 296.1(a)(2)(A). The submission of samples is "mandatory and appl[ies] whether or not the court advises a person . . . that he or she must provide the data bank and database specimens, samples, and print impressions." *Id.* § 296(d); *People v. Travis*, 44 Cal. Rptr. 3d 177, 183 (Ct. App. 2006) ("The provisions of the act are mandatory and automatic upon conviction of a felony."). A prisoner who refuses to provide a sample after receiving a written or oral request is subject to the use of reasonable force. Specifically, the Act provides that

> authorized law enforcement, custodial or corrections personnel, including peace officers . . . , may employ reasonable force to collect blood specimens, saliva samples, or thumb or palm print impressions pursuant to this chapter from individuals who, after written or oral request, refuse to provide those specimens, samples, or thumb or palm print impressions.

Cal. Pen. Code § 298.1(b)(1). Prison officials must make "efforts to secure voluntary compliance" before applying reasonable force. 15 Cal. Code Regs. § 3025(k).[5]

---

or no contest to any felony offense." Cal. Pen. Code § 296(a)(1). Since 2009, the term "qualifying persons" also includes any adult "arrested for or charged with" any felony offense. *Id.* § 296(a)(2)(A)-(C). A challenge to the expansion of the Act to those merely arrested on felony charges is pending on appeal. *Haskell v. Brown*, No. 10-15152 (argued and submitted July 13, 2010) (appeal of denial of preliminary injunction, *see* 677 F. Supp. 2d 1187 (N.D. Cal. 2009)). We are concerned in this appeal only with application of the Act to convicted felons.

[5]Reasonable force is defined in Department of Corrections regulations as "[t]he force that an objective, trained and competent correctional employee, faced with similar facts and circumstances, would consider necessary and reasonable to subdue an attacker, overcome resistance, effect custody, or gain compliance with a lawful order." 15 Cal. Code Regs. §§ 3268(a)(1), 3025(j).

## B. *The Fourth Amendment Does Not Preclude the Collection of Blood Samples from Prison Inmates for DNA Identification*

[3] Hamilton alleges that the warrantless, suspicionless taking of his blood sample was an illegal seizure in violation of the Fourth Amendment, which protects "[t]he right of the people to be secure in their persons, . . . against unreasonable searches and seizures." U.S. Const. amend. IV. This claim fails as a matter of law. "The compulsory extraction of blood for DNA profiling unquestionably implicates the right to personal security embodied in the Fourth Amendment, and thus constitutes a 'search' within the meaning of the Constitution." *Kincade*, 379 F.3d at 821 n.15. We have repeatedly held, however, that such compulsory blood extractions from convicted felons on supervised release do not violate the Fourth Amendment.[6] *Id.* at 836 (citations omitted); *United States v. Kriesel*, 508 F.3d 941, 946 (9th Cir. 2007) (concluding that the federal DNA Act, as amended in 2004 to expand the qualifying offenses to all felonies, did not violate the Fourth Amendment); *United States v. Hugs*, 384 F.3d 762, 769 (9th Cir. 2004) ("A condition of supervised release requiring a qualified felon to provide a DNA sample pursuant to the procedures set forth in the DNA Act, 42 U.S.C. § 14135a, does not violate the Fourth Amendment." (citing *Kincade*)).[7] Simi-

---

[6]We recently held that required submission of a DNA sample is an allowable condition of pre-trial release under the Bail Reform Act, 18 U.S.C. § 3142. *United States v. Pool*, 621 F.3d 1213 (9th Cir. 2010); *but see Friedman v. Boucher*, 580 F.3d 847 (9th Cir. 2009) (holding unconstitutional the warrantless, suspicionless forcible taking of a DNA sample from pre-trial detainee). A petition for rehearing *en banc* is pending in *Pool*.

[7]The federal DNA Analysis Backlog Elimination Act, Pub. L. No. 106-546, 114 Stat. 2726 (2000), as amended by the Justice for All Act, Pub. L. No. 108-405, § 203(b), 118 Stat. 2260, 2270 (2004), requires the collection of DNA samples from individuals arrested for, facing charges, or convicted of "qualifying federal offenses," which include any felony, any crime of violence, any crime of sexual abuse, or conspiracy to commit any such crime. 42 U.S.C. § 14135a(a), (d); 28 C.F.R. § 28.2 (providing a complete list of qualifying offenses). The federal DNA Act applies to individuals in custody or on probation, parole or supervised release. 42 U.S.C. § 14135(a)(1), (2).

lar state laws have been upheld, in this and other circuits, with respect to state prison inmates. *E.g., Rise v. Oregon*, 59 F.3d 1556 (9th Cir. 1995) (upholding Chapter 669, Oregon Laws 1991 against prison inmate's Fourth Amendment challenge); *Roe v. Marcotte*, 193 F.3d 72, 74 (2d Cir. 1999) (upholding a Connecticut law requiring convicted sexual offenders to submit blood samples to a DNA bank); *Vanderlinden v. Kansas*, 874 F. Supp. 1210 (D. Kan. 1995) (upholding Kansas law requiring convicted felons to submit blood samples for DNA identification), *aff'd sub nom. Schlicher v. Peters*, 103 F.3d 940, 941 (10th Cir. 1996); *Jones v. Murray*, 962 F.2d 302 (4th Cir. 1992) (upholding Virginia law requiring convicted felons to submit blood specimens for DNA identification). The California DNA Act is substantially similar to the federal and state law this circuit previously has upheld against Fourth Amendment challenges; it passes constitutional muster for the same reasons.

**[4]** *Kincade* addressed the application of the federal DNA Act to convicted felons on supervised release. 379 F.3d at 816. The *Kincade* plurality considered whether the search (*i.e.*, the taking of a blood sample) was reasonable by weighing the degree of intrusion on individual privacy against the degree to which the search was necessary to promote legitimate government interests.[8] *Id.* at 831-32, 836. First, the *Kincade* court considered the reasonable expectation of privacy of those on supervised release. *Id.* at 836. After noting that blood draws are a routine fact of modern life, the court elaborated that

---

[8]*Kincade* was a plurality opinion. Five judges voted to uphold the federal DNA Act against the Fourth Amendment challenge using a totality of the circumstances analysis. 379 F.3d at 832. One judge voted to uphold the federal DNA Act applying the special needs analysis. *Id.* at 840 (Gould, J., concurring). Five judges on the en banc panel would have found a Fourth Amendment violation. *Id.* at 842 (Reinhardt, J., dissenting) (joined by three judges); *id.* at 871 (Kozinski, J., dissenting); *id.* at 875 (Hawkins, J., dissenting).

> [f]or parolees and supervised releasees especially—individuals who while in custody have been lawfully subject to much more severe intrusions of their corporeal privacy than a sterile blood draw conducted by a trained medical professional, and who therefore leave prison with substantially reduced sensitivities to such exposure—the DNA Act's compelled breach of their bodily integrity is all the less offensive.

*Id.* at 837. It follows that the physical intrusion occasioned by a blood draw is no more, or perhaps even less, invasive for those who are currently incarcerated, like Hamilton, and therefore have even less of an expectation of privacy. *Friedman*, 580 F.3d at 862 (explaining that "Fourth Amendment rights for inmates . . . fall on the lowest end of the expectation of privacy spectrum") (Callahan, J., dissenting).

According to the *Kincade* plurality, the privacy intrusion of the DNA identification itself is similarly small. 379 F.3d at 837. The plurality explained that "the DNA profile derived from the defendant's blood sample establishes only a record of the defendant's identity—otherwise personal information in which the qualified offender can claim no right of privacy once lawfully convicted of a qualifying offense (indeed, once lawfully arrested and booked into state custody." *Id.* In fact, "once a person is convicted of one of the felonies included as predicate offenses under [the DNA Act], his identity has become a matter of state interest and he has lost any legitimate expectation of privacy in the identifying information derived from blood sampling." *Id.* (quoting *Rise*, 59 F.3d at 1560). The en banc plurality therefore concluded that the intrusion into privacy was minimal.

**[5]** Here, DNA testing under the California DNA Act, like the federal law, is limited to the collection of identifying information. Cal. Pen. Code § 299.5 (limiting use of samples to criminal identification, exclusion of suspects, and identification of missing persons and imposing penalties for misuse).

Having been convicted and incarcerated, Hamilton has no legitimate expectation of privacy in the identifying information derived from his DNA. Accordingly, the DNA identification at issue here is no more intrusive than that considered by the court in *Kincade*.

**[6]** Finally, the *Kincade* plurality measured the government's interest in obtaining DNA identification from those on supervised release and concluded that it is "monumental." *Id.* at 839. The compelling interests included: (1) ensuring compliance with the conditions of supervised release (by making it more likely that violations will be detected); (2) deterrence (by alerting the supervised releasee that the government will be able to identify him if he re-offends); and (3) "contributing to the solution of past crimes" to "help[ ] bring closure to countless victims of crime who have languished in the knowledge that perpetrators remain at large." *Id.* at 838-39. The plurality concluded that compulsory DNA profiling of qualified offenders under the federal DNA Act was reasonable. *Id.* at 839.

**[7]** Here, the *Kincade* interests in ensuring compliance with conditions of release and deterrence are less immediate, as Hamilton alleges that he is not eligible for parole until at least 2028. However, the *Rise* court, considering the Oregon law compelling DNA samples from prisoners convicted of serious felonies including murder and sexual offenses, concluded that the interest in preventing recidivism and identifying and prosecuting offenders was a sufficiently compelling government interest to outweigh the minimal privacy intrusion. 59 F.3d at 1562. Although the California DNA Act applies to a broader range of felons, the state's interest in adding convicted felons to its DNA data bank is at least as immediate as in *Rise. See People v. Robinson*, 224 P.3d 55, 66 (Cal. 2010) (citing "the overwhelming public interest in prosecuting crimes *accurately*" as a "compelling government interest" justifying the "minimal" intrusion of non-consensual collection of blood samples from felons (citations omitted)).

In light of the applicable precedent and the persuasive reasoning of the *Kincade* plurality, we conclude that Hamilton fails to state a claim under the Fourth Amendment for which relief may be granted.[9]

### C. *The Remaining Constitutional Challenges Are Without Merit*

In addition to his Fourth Amendment claim, Hamilton alleges an array of other federal and state constitutional challenges against the California DNA Act. We review them briefly below. All of them are meritless.

### 1. *Due Process Claim*

[8] The Ninth Circuit explicitly has rejected the argument that prison officials are required to provide a hearing before requiring an inmate to provide a blood sample for DNA analysis. *Rise*, 59 F.3d at 1562. In *Rise*, the court explained:

> The extraction of blood from an individual in a simple, medically acceptable manner, despite the individual's lack of an opportunity to object to the procedure, does not implicate the Due Process Clause. *Schmerber v. California*, 384 U.S. 757, 759-60 (1966) (upholding withdrawal of blood despite defendant's refusal to consent); *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957) (upholding blood extraction from unconscious person). Because the only criterion under Chapter 669 for extracting blood is a

---

[9]We note that some of Hamilton's allegations could be read to suggest that his blood sample was not taken in accordance with state law, but rather in retaliation for Hamilton's conduct as a prison gadfly. However, despite having been given three opportunities, Hamilton has failed to connect the collection of his blood sample to the malign intent of any named defendant. We hold only that the neutral application of the Act to prison inmates does not violate the Fourth Amendment.

conviction for a predicate offense, there would be lit-
tle of substance to contest at any provided hearing.

*Id.* at 1562-63. The same is undoubtedly true here. Under the California DNA Act, all "qualifying persons," without exception, must submit the required specimens and samples. This includes "any person . . . who is convicted of or pleads guilty or no contest to any felony offense." Cal. Pen. Code § 296(a)(1). California courts have explained that "the [Act's] requirements that specified persons give DNA samples are . . . 'self-executing' in that they are mandatory and arise with or without a trial court advisement or order to that effect." *People v. Dial*, 30 Cal. Rptr. 3d 252, 254 (Ct. App. 2005). Accordingly, we conclude that Hamilton's claims for relief based on an alleged due process violation were properly dismissed. *See also Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against . . . physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.")

## 2. *Eighth Amendment Claim*

**[9]** Hamilton alleges that by forcibly taking his blood sample, defendants demonstrated "reckless and deliberate indifference" in violation of the Eighth Amendment. This claim fails as a matter of law. The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference may include a prison doctor's inadequate response to a prisoner's medical needs, "prison guards intentionally denying or delaying access to medical care, or intentionally interfering with the treatment once prescribed." *Id.* at 104-105. Here, Hamilton makes no allegation that any defendant remained deliberately indifferent

to his serious medical needs. Accordingly, his deliberate indifference claim fails as a matter of law.

**[10]** To the extent the SAC can be read to allege that defendants' use of physical force to extract the blood sample violates the Eighth Amendment, this claim fails as well. In order to state a claim under the Eighth Amendment, a plaintiff must allege that the challenged force was applied for the purpose of causing harm, *i.e.,* "maliciously and sadistically," rather than for legitimate reasons, such as maintaining order or discipline in the prison. *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1180 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Notably, Hamilton does not allege that defendants, in subjecting him to a blood draw against his will, caused "the unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). He does not allege that he was subject to physical force in connection with the taking of the blood sample beyond being handcuffed and then restrained in a chair. He does not allege the infliction of pain beyond the needle stick and the discomfort of the temporary restraint. Even assuming that Hamilton found this experience uncomfortable, frustrating and humiliating, on these facts, there is no viable Eighth Amendment claim. *See Sanders v. Conan*, 864 F. Supp. 496, 499-501 (E.D.N.C. 1994) (finding no Eighth Amendment violation where prison officials used reasonable force to collect DNA samples from unwilling prisoners pursuant to North Carolina statute). We conclude that this claim for relief was properly dismissed.

### 3.  *Remaining Claims*

**[11]** Hamilton's state law claims also fail as a matter of law. He challenges the California DNA Act as violating the right to procedural due process under the California Constitution. The California courts, however, have rejected this argument. *See Travis*, 44 Cal. Rptr. 3d at 192-95. California courts also have repeatedly rejected Hamilton's argument that the collection of blood samples under the Act is an illegal search

or seizure. *See Robinson*, 224 P.3d at 67; *Travis*, 44 Cal. Rptr. 3d at 184; *People v. Adams*, 9 Cal. Rptr. 3d 170, 183-84 (Ct. App. 2004); *People v. King*, 99 Cal. Rptr. 2d 220, 230 (Ct. App. 2000); *see generally* 4 Witkin, CAL. CRIMINAL LAW, *Illegal Evidence* § 326B (3d ed. 2010) (compiling cases).

We have reviewed appellant's remaining federal and state law claims and we find them to be without merit.

## IV

## CONCLUSION

For the reasons stated herein, the judgment of the district court is

**AFFIRMED.**