**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DUANE RONALD BELANUS, *Plaintiff-Appellant*, <br><br> v. <br><br> PHIL CLARK; RAYMOND POTTER; CORY OLSON; LARRY PLATTS; ALLEN HUGHES; PAT HURLEY; LEO DUTTON; LEO GALLAGHER; MELISSA BROCH, *Defendants-Appellees*. | No. 12-35952 <br><br> D.C. No. 6:12-cv-00051-DLC <br><br><br> OPINION |

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, Chief District Judge, Presiding

Argued and Submitted
April 7, 2015—Seattle, Washington

Filed August 5, 2015

Before: Ferdinand F. Fernandez, Johnnie B. Rawlinson,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan;
Partial Concurrence and Partial Dissent by Judge
Fernandez

## SUMMARY[*]

### Prisoner Civil Rights

The panel affirmed the district court's dismissal of a prisoner civil rights complaint alleging constitutional violations as a result of searches of plaintiff's home, storage shed, and workplace in 2008, that were made in connection with his criminal prosecution.

The panel held that the district court properly noted that to the extent plaintiff asserted that the evidence collected during the searches caused his conviction, his claim was barred by *Heck v. Humphrey,* 512 U.S. 477 (1994). To the extent the claims were not barred by *Heck*, the panel held that the district court also properly determined that the complaint was barred by Montana's three-year statute of limitations and that equitable tolling did not apply because plaintiff knew of the searches when they occurred and that they might be warrantless. The panel further held that the district court properly dismissed the complaint without leave to amend because it was clear that no amendment could overcome the statute of limitations bar.

The panel held that the district court acted within its discretion in assessing a strike against plaintiff pursuant to 28 U.S.C. § 1915(g), even though he had paid the docket fee. Determining that plaintiff had standing to challenge the imposition of a strike pursuant to § 1915(g), the panel concluded that applying a strike to a paid case was consistent

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

with the plain language of the statute, furthered the purposes behind the Prison Litigation Reform Act, and accorded with the rulings of four of other sister circuits.

Concurring in part and dissenting in part, Judge Fernandez stated that it was not absolutely clear that the deficiencies in plaintiff's complaint could not be cured by amendment and that plaintiff should have been given an opportunity to plead a basis for equitable tolling. Judge Fernandez also stated that the district court's order that the dismissal of plaintiff's action counted as a strike did not have any binding effect upon him, and therefore plaintiff had not suffered an injury in fact sufficient to establish a case or controversy.

## COUNSEL

Thomas Christoph Keller (argued) and Britta Stamps (argued), certified law student representatives, University of Arkansas Federal Appellate Litigation Project, Fayetteville, Arkansas; Lindsey C. Lien and Colin Seaborg, certified law student representatives, Gregory C. Sisk, supervising attorney, University of St. Thomas School of Law Appellate Clinic, Minneapolis, Minnesota, for Plaintiff-Appellant.

Rebekah J. French, Special Assistant Attorney General, Helena, Montana, for Amicus Curiae State of Montana.

## OPINION

CALLAHAN, Circuit Judge:

Montana state prisoner Duane Ronald Belanus filed this § 1983 action asserting claims based on the alleged violation of his rights under the United States and Montana constitutions as a result of searches of his home, storage shed, and workplace in 2008, that were made in connection with his criminal prosecution. The district court dismissed his complaint with prejudice at the screening stage and held that Belanus's complaint constituted a "strike" against him pursuant to 28 U.S.C. § 1915(g). We affirm, holding that Belanus cannot assert a cognizable claim for equitable tolling of the statute of limitations, and that the district court could determine that his complaint constitutes a "strike."

## I.  Background

On August 3, 2008, Belanus returned to his home to find the police searching his home. Belanus was detained and later arrested. Belanus was charged "with kidnapping [his girlfriend], raping her, inflicting bodily injury upon her in the course of the rape, unlawfully tampering with physical evidence of the rape, burglarizing [the girlfriend's] residence, and committing a theft therein." *State v. Belanus*, 240 P.3d 1021, 1022–23 (Mont. 2010). Belanus was tried in June 2009, convicted, and, in August 2009, sentenced to life without the possibility of parole. Belanus appealed to the Montana Supreme Court, which affirmed his conviction. *Id.* at 1025.

On June 5, 2012, Belanus, proceeding pro se, filed a civil complaint in the United States District Court of the District of

Montana.     He alleged that the police had conducted warrantless searches of his home, his shed, and his workplace between August 3 and August 8, 2008, in violation of his rights under the United States and Montana constitutions.  He named as defendants officers with the Lewis and Clark County Sheriff's Department and attorneys with the County. He paid the filing fee.

The gist of Belanus's complaint is that the police: (1) searched his residence on August 3 and 4, 2008, prior to the issuance of a warrant on August 5, 2008; (2) searched his shed on August 5, 2008, prior to the issuance of a warrant on August 12, 2008; and (3) between August 3 and 15, 2008, searched his workplace without a warrant.

Belanus alleged that the "illegally obtained evidence was knowingly used against me in court proceedings.  I was convicted of a crime that I still profess my innocence." Belanus sought "monetary damages in excess of $75,000 from each defendant for just causes of: physical, emotional, mental, loss of freedom, and financial stress and anguish."

Belanus's complaint was reviewed by a Magistrate Judge, who concluded that the complaint should be dismissed.  He reasoned that if Belanus was challenging his conviction, his claim was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and that it was otherwise barred by the applicable three-year statute of limitations.  The Magistrate Judge further found that the dismissal of Belanus's action would count as a strike under 28 U.S.C. § 1915(g).  Belanus filed objections to the Magistrate Judge's findings and recommendations, and the District Judge adopted the Magistrate Judge's findings and recommendations, dismissed Belanus's complaint with prejudice, and held that the dismissal would count as a strike

pursuant to 28 U.S.C. § 1915(g).  Belanus filed a timely notice of appeal.

## II.  Standard of Review

We review de novo the district court's dismissal of an action under 28 U.S.C. § 1915A.  *Hamilton v. Brown*, 630 F.3d 889, 892 (9th Cir. 2011).  In determining whether a complaint states a claim, "a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff."  *Id*. at 892–93 (quoting *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000)).  Also, questions of statutory interpretation, such as the applicability of the strike provision of 28 U.S.C. § 1915(g), are reviewed de novo.  *Andrews v. King*, 398 F.3d 1113, 1118 (9th Cir. 2005).

## III.  The *Heck* Bar

Because Belanus's pro se complaint alluded to his conviction and his assertion of innocence, the district court properly noted that to the extent he asserted that the evidence collected during the searches caused his conviction, his claim was barred by *Heck*.[1]  512 U.S. at 487.  The district court also

---

[1] The Supreme Court held:

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, will *not*

recognized that if a determination of the constitutionality of the searches did not necessarily imply the invalidity of Belanus's conviction, there was no *Heck* bar. As the thrust of Belanus's complaint did not appear to challenge his conviction, the district court properly proceeded to consider whether it was barred by the statute of limitations.

In *Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir. 1995), we stated that where a defendant's claims are *Heck*-barred, the dismissal should be without prejudice "so that [the plaintiff] may reassert his claims if he ever succeeds in invalidating his conviction." Accordingly, we construe the district court dismissal of Belanus's action to be without prejudice as to any *Heck*-barred claim that he might assert at some time in the future.

## IV.  The Statute of Limitations

As the district court and Belanus agree, the applicable statute of limitations is Montana's three-year statute of limitations governing personal injury actions, Mont. Code Ann. § 27-2-204(1). *See Wilson v. Garcia*, 471 U.S. 261, 280 (1985) (holding "that § 1983 claims are best characterized as personal injury actions," and that the lower court correctly applied the state's three-year statute of limitations governing actions "for an injury to the person or reputation of any person").

---

demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 487 (footnotes omitted).

Federal law determines when a cause of action accrues and when the statute of limitations begins to run for a § 1983 claim. *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (noting that "the accrual date of a § 1983 cause of action is a question of federal law"); *Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012) (stating that "[f]ederal law determines when a cause of action for a Section 1983 claim accrues and, hence, when the statute of limitations begins to run").

Under federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action. *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996); *Pouncil*, 704 F.3d at 574. Thus, "[a]n action ordinarily accrues on the date of the injury." *Id*.

Here, Belanus's causes of action accrued on August 3, 2008, and on whatever dates over the next week that the police searched his home, shed, and workplace. Belanus does not deny that he knew of the searches. He states that when he came home on August 3, 2008, the police were in his home. Furthermore, the documents attached to his complaint confirm that he was aware of the searches and the possible lack of timely search warrants by the time of his trial in June 2009. Accordingly, on its face, Belanus's June 5, 2012 complaint appears to be untimely and barred by Montana's three-year statute of limitations.

Belanus, however, argues that his complaint is not barred because he can assert a viable argument for equitable tolling of the statute of limitations. He notes  that although federal law determines the accrual of his cause of action, state law governs the tolling of the statute of limitations in § 1983 cases. *See Wallace*, 549 U.S. at 394 (commenting "[w]e have

generally referred to state law for tolling rules, just as we have for the length of statutes of limitations").

Citing *Schoof v. Nesbit*, 316 P.3d 831 (Mont. 2014), Belanus argues that he has a viable argument that the statute of limitations was equitably tolled under Montana law. In *Schoof*, a county resident sought to challenge a decision by the county commissioners to permit elected county officials to receive cash payments in lieu of county contributions on the officials' behalf to a group health insurance program. *Id.* at 833. Schoof did not file his action until several years after the commissioners' decision, and the defendants successfully moved to dismiss on the ground that the action was barred by the applicable thirty-day statute of limitations. *Id.* at 833–34. On appeal, the Supreme Court of Montana determined that Schoof's complaint was timely under the equitable tolling doctrine. *Id.* at 839–41.

Montana law provides that the period of limitation does not begin until the claim has been discovered or should have been discovered.[2] Under Montana law, "[t]he doctrine of

---

[2] The Montana Supreme Court noted that Mont. Code Ann. § 27-2-102(3) provides:

> The period of limitation does not begin on any claim or cause of action for an injury to person or property until the facts constituting the claim have been discovered or, in the exercise of due diligence, should have been discovered by the injured party if:
>
> (a) the facts constituting the claim are by their nature concealed or self-concealing; or

equitable tolling arrests the running of the limitations period after a claim has accrued, allowing in limited circumstances for an action to be pursued despite the failure to comply with relevant statutory filing deadlines." *Id*. at 839–40 (quotation marks and citation omitted). The Montana Supreme Court favorably compared its perspective to federal equitable tolling rules, citing cases that held that: (1) equitable tolling is limited to rare and exceptional circumstances where the defendant is responsible for concealing the existence of plaintiff's cause of action; (2) equitable tolling "does not require that the defendant's conduct rise to the level of fraud, or even be intentional, but only that the nature of the defendant's actions has concealed from the plaintiff the existence of the claim"; and (3) equitable relief is only available when the plaintiff is actually prevented from filing on time despite exercising diligence. *Id*. at 840. The court further noted that statutes of limitations "provide a reasonable means of preventing stale claims and ensuring that claims are filed before essential evidence disappears." *Id*. at 841 (citation and quotation marks omitted). The Montana Supreme Court concluded that Schoof's allegations qualified for equitable tolling because "neither he nor the public learned or could have learned about the 'cash in lieu' policy until four years after it had been adopted, at which time he promptly filed suit." *Id*. at 840.

Belanus argues that he is entitled to equitable tolling because state and county officials did not respond to his

---

(b) before, during, or after the act causing the injury, the defendant has taken action which prevents the injured party from discovering the injury or its cause.

*Schoof*, 316 P.3d at 839.

written requests for all warrants covering the searches. However, it appears that at the time of his criminal trial, or sometime thereafter, Belanus did receive copies of the search warrants that issued on August 5 and 12, 2008. Belanus alleges that he asked the attorney who was representing him in his criminal proceedings to investigate the search warrant issue. Belanus also asked the state trial court, as early as November 10, 2010, to provide him with the full record.

Belanus's plea for equitable tolling fails because, taking his allegations as true, as we must, *Hamilton*, 630 F.3d at 892–93, Belanus knew of his cause of action well within the three-year statute of limitations. As noted, federal law determines when his cause of action arose. *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991). Moreover, federal law holds that a cause of action for illegal search and seizure accrues when the wrongful act occurs, *Venegas v. Wagner*, 704 F.2d 1144, 1146 (9th Cir. 1983), even if the person does not know at that time that the search was warrantless. *See Kuan v. U.S. Customs Service*, No. CV 08-1980-DDP (MAN), 2009 WL 6340016, at *5 (C.D. Cal. Dec. 16, 2009).

Accordingly, because Belanus knew of the searches when they occurred (or shortly thereafter), and that they might be warrantless, the defendants' alleged failures to respond to his written inquiries, even if wrongful, do not provide a viable basis for equitable tolling under Montana law. Defendants did not conceal the existence of Belanus's cause of action or prevent him from filing his action within three years of the search. To extend equitable tolling to Belanus's claims would be contrary to the purpose of the three-year statute of limitations to ensure that claims are filed before essential evidence disappears. *See Schoof*, 316 P.3d at 841.

Belanus's complaint also asserted claims against the prosecutors. However, these claims are not independent of his other claims. To the extent that Belanus's challenge to the prosecutors' actions necessarily implicate the validity of his conviction, Belanus's claims are barred by *Heck*, 512 U.S. at 487. In essence, Belanus alleges that the prosecutors concealed the lack of warrants for the searches. He does not allege any injury or violation of federal law caused by the prosecutors' alleged actions that is distinct or separate from the allegedly unlawful searches. Accordingly, because the materials submitted by Belanus with his complaint show that he was aware, at the time of his trial in 2009, that the searches may have been improper, his claims against the prosecutors are also barred by the three-year statute of limitations.

Th district court properly dismissed Belanus's complaint without leave to amend for failure to state a cause of action upon which relief could be granted. Based on all the materials Belanus submitted to the district court, it is clear that no amendment could overcome the statute of limitations bar.

## V. The District Court Acted Within Its Discretion in Assessing a Strike Against Belanus Pursuant to 28 U.S.C. § 1915(g)

Belanus argues that the district court can only authorize a strike pursuant to 28 U.S.C. § 1915(g) when the prisoner action that is dismissed was filed in forma pauperis (sometimes referred to as IFP). Section 1915(g) was enacted as part of the Prison Litigation Reform Act (the PLRA) of 1995, and provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought *an action or appeal* in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

(emphasis added).

Belanus argues that although the phrase "action or appeal" may seem broad, when read in context, it does not include fee-paid actions. He asserts that the same phrase is used in the statute's pre-screening provision, 28 U.S.C. § 1915(e)(2)(B), and we have held that the pre-screening provision applies only to in forma pauperis proceedings. Belanus argues that Congress intended the phrase to have the same meaning in both sections. Belanus further notes that we held that the phrase "action or appeal" in § 1915(g) does not include habeas proceedings. *See Andrews*, 398 F.3d at 1122 (noting that "dismissed habeas petitions do not count as strikes under § 1915(g)"); *Naddi v. Hill*, 106 F.3d 275, 277 (9th Cir. 1997) (agreeing that dismissed habeas petitions do not count as strikes under § 1915(g)).

Belanus urges that the broader context of § 1915, including its title—"Proceedings in forma pauperis"—indicates that fee-paid litigation does not qualify as an "action or appeal." He contends that a contrary interpretation would produce absurd results as litigants like Belanus "would have

*absolutely no incentive* to pay filing fees up front until after they have already accrued three strikes." He further argues that the district court's approach would increase the amount of in forma pauperis litigation in federal court and that "the indiscriminate assessment of strikes would discourage prisoners from working to fund their litigation, and would unfairly penalize those who do work." Belanus concludes by asking us to "decline to follow the few non-binding decisions from other circuits that have held that the plain language of § 1915(g) extends to fee-paid actions."

Before addressing the merits of Belanus's arguments, we must determine whether he has standing to raise them. In other words, has he "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (footnote and internal quotation marks and citations omitted); *see also Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 1999) (en banc) (holding that issues presented must be "definite and concrete, not hypothetical or abstract"—that plaintiffs "face a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement," rather than an imaginary or speculative injury).

Although a close question, we find that Belanus has presented a sufficiently concrete harm to allow us to consider the merits of his contentions. If we affirm the district court's decision, Belanus will have one strike against him pursuant to § 1915(g). True, it is only one strike. But as every baseball batter knows, taking a first strike changes your approach to the next pitch. Here, the strike will inevitably influence Belanus's determinations to seek judicial review in

a federal court on any number of issues that may arise during his sentence of life without the possibility of parole. We conclude that Belanus has standing to challenge the imposition of a strike pursuant to § 1915(g).**[3]**

Turning to the merits of Belanus's claim, we conclude that the fact that a prisoner pays the docket fee is no barrier to a court, when dismissing the case as frivolous, directing that the dismissal count as a strike under 28 U.S.C. § 1915(g). Our starting point is the plain language of the statute, *United States v. Williams*, 659 F.3d 1223, 1225 (9th Cir. 2011), and here the language is clear. The words "an action or appeal" are not modified and have an ordinary meaning. Where "the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (internal quotation marks and citation omitted). Accordingly, we are constrained by Congress's choice of language to allow dismissals in "an action or appeal," to be designated as strikes under § 1915(g), regardless of whether the filing fee was paid.

Furthermore, this interpretation is consistent with and furthers the statute's purposes. The filing fee provisions of § 1915 "were enacted to deter the large number of frivolous inmate lawsuits that were 'clogging' the federal courts and 'draining' limited judicial resources." *Taylor v. Delatoore*, 281 F.3d 844, 849 (9th Cir. 2002). A frivolous action clogs the system and drains resources regardless of whether the plaintiff pays the filing fee or proceeds in forma pauperis. We see no reason for allowing wealthy prisoners to clog the

---

**[3]** Our conclusion is consistent with the Seventh Circuit's perspective. *See Duvall v. Miller*, 122 F.3d 489, 490 (7th Cir. 1997) (holding that the dismissal of a paid appeal could count as a strike under § 1915(g)).

courts by paying the filing fees, when access would be denied to an impecunious prisoner, particularly as filing fees do not come close to covering the cost to the court of a frivolous action. *See Hyland v. Clinton*, 3 F. App'x. 478, 480 (6th Cir. 2001) (noting that "imposition of sanctions is particularly appropriate, because it appears that Hyland has the funds to continue to prosecute suits without regard to § 1915(g)").

In *Duvall v. Miller*, 122 F.3d 489 (7th Cir. 1997), the Seventh Circuit considered and rejected an argument similar to that advanced by Belanus. It commented:

> The only reason we can think of for interpolating such a limitation is that a prisoner who had paid for the previous suit or appeal had by doing so manifested a greater seriousness than one who had done so at no cost to himself. We do not think this speculative reason is sufficiently strong to override the statutory language. The prisoner who has brought three suits or appeals that lacked sufficient merit to get beyond the pleadings (or that were an outright abuse of process) is not an appealing candidate for a waiver of the filing fee in his fourth through nth cases, even if he paid for the previous suits. We therefore hold that a dismissal need not, to qualify as a strike, be of an action or appeal filed in forma pauperis.

*Id.* at 490. We agree with the Seventh Circuit. Neither the purported "seriousness" of a paid filing, nor Belanus's speculation that applying § 1915(g) to paid filings would

discourage paid filings, are sufficient to allow us to disregard the plain language of the statute.

Belanus's references to other similar language in the PLRA and to our exclusion of habeas petitions from § 1915(g) coverage are not supportive of his position. Neither reference supports his reading of "action or appeal" in § 1915(g). The reasons for holding that pre-screening provisions apply only to IFP proceedings do not resonate when interpreting "action or appeal" as used in § 1915(g).[4]

---

[4] None of the cases cited by Belanus as holding that the pre-screening provisions apply only to IFP proceedings are directly applicable to his case. In *Marks v. Solcum*, 98 F.3d 494 (9th Cir. 1996), we determined that "[b]ecause section 1915(e)(2) does not impair any substantive rights of prisoners, but instead merely affects the ability of prisoners to maintain appeals in forma pauperis, we conclude that section 1915(e)(2) is a procedural rule which raises no retroactivity concerns." *Id*. at 496. This holding has little relevance to § 1915(g).

In *Grayson v. Mayview State Hospital*, 293 F.3d 103, 109 n.10 (3d Cir. 2002), the Third Circuit commented:

> Although the language of § 1915(e)(2) does not expressly limit the provision's reach to *in forma pauperis* claims, we believe Congress intended it to be so limited. *See Benson v. O'Brian*, 179 F.3d 1014, 1016–17 (6th Cir. 1999). The provision is located within § 1915, entitled "Proceedings *in forma pauperis*," and it replaces § 1915(d), which only applied to *in forma pauperis* claims. *Id.* at 1016. Further, a contrary interpretation expanding § 1915(e)(2) to all suits would both alter radically the process of civil litigation in federal courts and make similar provisions of the PLRA superfluous. *Id.* at 1017. Indeed, we have previously stated that "Section 804 of the PLRA, which amends 28 U.S.C. § 1915, redefines the rights and obligations of litigants who are

We do not think that the provisions in the PLRA setting forth the contours for proceeding in forma pauperis conflict in any way with allowing § 1915(g) strikes to issue in paid actions or appeals.

Our conclusion is supported by four of our sister circuits that have held that strikes under § 1915(g) may be accrued regardless of whether the prisoner has paid the filing fee or is proceeding in forma pauperis. *Byrd v. Shannon*, 715 F.3d 117, 124 (3d Cir. 2013) (holding that "strikes may be accrued in actions or appeals regardless of whether the prisoner has prepaid the filing fee or is proceeding IFP"); *Duvall*, 122 F.3d at 490 (holding "that a dismissal need not, to qualify as a strike, be of an action or appeal filed in forma pauperis"); *Burghart v. Corr. Corp. of Am.*, 350 F. App'x 278, 279 (10th Cir. 2009) (noting that the statute's purposes "are achieved by preventing a prisoner who has paid filing fees in past frivolous law suits from proceeding IFP, just as they are achieved by preventing a prisoner from proceeding IFP for

---

granted *in forma pauperis* status." *Santana v. United States*, 98 F.3d 752, 753–54 (3d Cir. 1996).

But the redefinition of the rights and obligations of individuals granted leave to proceed IFP is not inconsistent with reading the plain language in § 1915(g) as covering both paid and IFP actions.

In *Benson v. O'Brian*, 179 F.3d 1014, 1016 (6th Cir. 1999), the Sixth Circuit held that pre-screening under § 1915(e)(2) applied only to IFP cases because pre-screening all complaints: (a) would render the specific prisoner complaint screening provision, § 1915A, largely superfluous; and (b) "such a holding would completely negate the policy of this and several other circuits that a plaintiff generally should be given notice and an opportunity to respond prior to the district court's sua sponte dismissal of the complaint." *Id*. at 1017. Again these reasons provide little guidance to our reading of § 1915(g).

the fourth or fifth time"); *Hyland*, 3 F. App'x at 480 (noting that "[t]he imposition of sanctions is particularly appropriate, because it appears that Hyland has the funds to continue to prosecute suits without regard to § 1915(g)"). No court of appeal appears to have held that strikes may only be accrued in IFP actions or appeals. The district court did not abuse its discretion in assessing a strike against Belanus.

## VI. Conclusion

Pursuant to the pre-screening procedures set forth in the PLRA, the district court properly considered Belanus's complaint and summarily determined that he could not state a cause of action. We affirm that decision. The materials submitted by Belanus in support of his complaint show that Belanus knew of the searches in August 2008. Under federal law, his claims concerning the searches accrued at that time. *See Pouncil*, 704 F.3d at 574. Under the applicable Montana law, his claims could only be equitably tolled if the defendants had concealed the existence of his claim or prevented him from filing a timely lawsuit. *Schoof*, 316 P. 3d at 840–41. Taking Belanus's filings as true, he has not, and cannot, make such a showing. Accordingly, he has failed to allege a viable claim for equitable tolling and we affirm the district court's dismissal of his action.

We also affirm the district court's decision to count the dismissal as a strike against Belanus for purposes of 28 U.S.C. § 1915(g). We conclude that applying a strike to a paid case is consistent with the plain language of the statute, furthers the purposes behind the Prison Litigation Reform Act, and accords with the rulings of four of our sister circuits.

The district court's dismissal and award of a strike under § 1915(g) are **AFFIRMED**.

FERNANDEZ, Circuit Judge, concurring in part and dissenting in part:

I agree with much of what the majority says. I specifically agree with parts I, II and III of the majority opinion. The parts with which I do not entirely agree are IV, V and VI.

A. As to part IV, I think it is fair to assume that we all agree that "[a] district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012).

So where do I diverge from my colleagues? Well, the district court did not consider the fact that Montana allows equitable tolling "where a plaintiff is substantially prejudiced by a defendant's concealment of a claim, despite the exercise of diligence by the plaintiff." *Schoof v. Nesbit*, 316 P.3d 831, 841, 373 Mont. 226, 239 (2014); *see also Hardin v. Straub*, 490 U.S. 536, 539, 109 S. Ct. 1998, 2000–01, 104 L. Ed. 2d 582 (1989); *cf. Wallace v. Kato*, 549 U.S. 384, 391–95, 127 S. Ct. 1091, 1097–99, 166 L. Ed. 2d 973 (2007). Belanus' pleading does suggest that he was unable to determine the illegality of the searches because the police officers testified that there were warrants, and despite his requests, the defendants failed and refused to supply him with copies of the

alleged warrants, if any existed. In light of that, even though he did not sufficiently plead his claims or his entitlement to equitable tolling, at this point[1] I am unable to say that it is absolutely clear that the deficiencies cannot be cured by amendment.

While I am not at all certain that Belanus can spell out a basis for equitable tolling, I do believe that he should have been given an opportunity to do so. For example, from what we have in the record before us, he was not given a copy of the receipt from the August 3, 2008, search of his home that he came upon while the officers were there, and at his trial in June 2009 the officers testified that a warrant was, indeed, issued before the search took place. It was not until late 2009 or early 2010 that he discovered (suspected) that there was no such warrant. Allegations along those lines might suffice to spell out a period of equitable tolling sufficient to extend the statute of limitations period to or after June 5, 2012. Of course, I do not know that he can, or will be able to, so plead. I only say that giving him an opportunity so to do is not chimerizing — the district court should have given him that opportunity.

B. As to part V, while I do not disagree with the majority's discussion of the merits, I do not think that the district court's unnecessary order that the dismissal of Belanus' action "counts as a strike" has any binding effect upon him or upon any future court. That is, Belanus has not

---

[1] I recognize that Montana argues that Belanus will not be able to allege sufficient facts, but that is best considered by the district court after Belanus has an opportunity to amend the current complaint. *See Gallardo v. United States*, 755 F.3d 860, 865 (9th Cir. 2014); *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (per curiam).

suffered "an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (footnote, citations and internal quotation marks omitted). If and when Belanus does file another case in federal court seeking redress for some asserted wrong, and if and when he has insufficient funds and files a motion to proceed in forma pauperis, and if and when a district court denies that motion because it has been demonstrated that Belanus has previously accrued three strikes pursuant to 28 U.S.C. § 1915(g), that rejection order will be appealable. *See Andrews v. King*, 398 F.3d 1113, 1118–19 (9th Cir. 2005). But at this point, any suggestions "of possible future injury do not satisfy the requirements of Art. III." *Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S. Ct. 1717, 1724, 109 L. Ed. 2d 135 (1990). Thus, I would determine that as to strikes no case or controversy within the meaning of the Constitution exists at this time. *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).[2] It is tempting to issue an advisory opinion on the strike question for future courts that might have to struggle with deciding whether a previous piece of litigation did result in a strike, but I think that the temptation should have been resisted by the district court and should be resisted by us.[3] *See Thomas*, 220 F.3d at 1138; *cf. Coleman*

---

[2] It matters not whether we view the issue "as one of standing or ripeness." *Id.*

[3] Moreover, I fear that our holding, which makes district courts' advisory rulings about whether dismissals are strikes binding and appealable, will lead to a morass of procedural problems for plaintiffs, defendants, and courts. Problems may arise when those rulings are made

*v. Tollefson*, __ U.S. __, __, 135 S. Ct. 1759, 1765, __ L. Ed. 2d__ (2015) (the time to appeal "from a third-strike trial-court dismissal" is when it occurs).

Therefore, I respectfully concur in part and dissent in part.

---

and in the future when a prisoner seeks to take advantage of the provisions of § 1915(a). *See Andrews*, 398 F.3d at 1120.